IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LORITA DOSS for,
K.R.L.,                                                                                           PLAINTIFF

v.                                          Case No. 1:06-cv-1066

MICHAEL J. ASTRUE,[1] Commissioner
Social Security Administration                                                     DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Lorita Doss (Plaintiff's mother), brings this action pursuant to 42 U.S.C. § 405(g), on behalf of her son, K.R.L. (Plaintiff), a minor child, seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act), 42 U.S.C. §1382c(a)(3).

**1. Procedural Background:**

On June 30, 2003, Plaintiff's mother filed an SSI application on behalf of Plaintiff, a minor child, alleging disability due to seizures and hyperactivity. (Tr. 41-43, 72).[2] The Agency denied his application initially and on reconsideration. (Tr. 26-32, 36-37). Upon Plaintiff's request, an

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

administrative hearing was held before an Administrative Law Judge (ALJ) on July 21, 2005, at which Plaintiff appeared, represented by counsel, Denver Thornton, and his mother testified. (Tr. 38, 136-151). The ALJ issued a decision on September 13, 2005, finding that Plaintiff was not disabled. (Tr. 11-17). The Appeals Council denied Plaintiff's request for review on April 11, 2006, thereby making the ALJ's decision the final decision of the Commissioner for judicial review under 42 U.S.C. § 405(g) (Tr. 3-5).

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2007); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

In this case, Plaintiff is a minor child seeking disability benefits. On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996,

Public Law No. 104-193, 110 Stat. 2105 (1996), which provided a more stringent standard for determining eligibility for Title XVI childhood disability benefits than the old law and prior regulations required. *See Rucker v. Apfel*, 141 F.3d 1256, 1259 (8th Cir. 1998); 142 Cong. Rec. H8913; H.R. Conf. Rep. No. 725, 104th Cong. 2d Sess. 328 (1996), reprinted in 1996 U.S. Code, Cong. and Ad. News 2649, 2716; Federal Register, Vol. 62, No. 28, p. 6409. Among other things, the new law amended Section 1614(a)(3) of the Act, 42 U.S.C. § 1382c(a)(3), and changed the statutory definition of disability for individuals under age eighteen under the SSI program. Under the new standard, a child is entitled to disability benefits only if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* Pub. L. No. 104-193 § 211(a)(4)(c); 20 C.F.R. § 416.906. The new standard applies to all applicants who filed claims on or after August 22, 1996, or whose claims had not been finally adjudicated by August 22, 1996. Since Plaintiff filed his application in 2003, the new law applies.

Under the new law, The ALJ's determination of disability is based on a 3-step analysis. *See* 20 C.F.R. § 416.924. First, the ALJ must determine whether the minor child has engaged in substantial gainful activity. If not, the ALJ will proceed to the second step where the ALJ must consider whether the child has a severe impairment. If a severe impairment is found, the ALJ will proceed to the third step. At this step, the ALJ, must consider whether the impairment meets, or is medically or functionally equivalent, to a disability listing in the Listing of Impairments (Listings), *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

A single method is provided for evaluating functional equivalence to a Listing based on six domains of functioning. The six domains are: 1. Acquiring and Using Information; 2. Attending and Completing Tasks; 3. Interacting and Relating With Others; 4. Moving About and Manipulating Objects; 5. Caring for Yourself; and 6. Health and Physical Well-being. If the minor child claiming benefits has "marked" limitations in two domains or an "extreme" limitation in one domain, the impairment is functionally equal to a disability in the listing. A "marked" limitation is impairment that is "more than moderate" and "less than extreme." Marked limitation is one which seriously interferes with a child's ability to independently initiate, sustain or complete activities. An "extreme" limitation is more than "marked" and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. *See* 20 CFR § 416.926(a)(b)(2).

**3. Discussion**

Plaintiff argues the ALJ's decision denying SSI benefits to Plaintiff is not supported by substantial evidence. Plaintiff asserts the ALJ did not properly assess Plaintiff's impairments to determine if they were functionally equal to an impairment in the Listings. Plaintiff also argues that he meets Listing 11.02 for epilepsy. The Defendant argues the ALJ properly followed the three-step sequential evaluation process set forth in 20 C.F.R. § 416.924. Defendant also states that the medical records do not show any diagnoses for epilepsy or that any testing was ever performed to determine if Plaintiff suffered from epilepsy, accordingly Defendant argues Plaintiff's impairments do not meet a Listing for epilepsy.

Neither party disputes the findings of the ALJ with the first two steps of this analysis. Therefore, the Court will address only the third step of the analysis in this case.

**A. Functional Equivalence Findings of ALJ**

At step three the ALJ found Plaintiff's impairments did not meet nor were they medically or functionally equivalent to a disability listing in the Listing of Impairments. (Tr. 17). Plaintiff argues that the ALJ erred in this finding. (Doc. No. 8 p. 2). The Defendant asserts that the ALJ properly analyzed the Plaintiff's claimed impairments and properly found no disability.

As described above, a single method is provided for determining a claimed impairment's functional equivalence to a disability listed in the Listing of Impairments based on the six domains of functioning. *See* 20 CFR § 416.926(a)(b)(2). In this case Plaintiff argues that he has "extreme" limitation in two domains of functioning, "marked" limitation in two domains, no limitation in one domain, and it is unclear of his claimed limitation in one domain. (Doc No. 8 pg. 16-17). Plaintiff further argues the ALJ's findings are not supported by substantial evidence. The ALJ found that Plaintiff's impairments were not of the severity to functionally equal any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1.

**1. Acquiring and using information**: In this domain, the ALJ considers how well a child acquires and learns information, and how well the information is used once learned. (Tr. 13-14). *See* 20 C.F.R. § 416.926a(g). Plaintiff claims that he has extreme limitation in this domain. (Doc. No. 8 p.16). While the ALJ found the Plaintiff needed assistance with reading and spelling, he determined that the Plaintiff had a less than marked limitation in this domain.

The medical evidence of record and school reports do not indicate any diagnosis or treatment

for a learning disability or mental retardation that might impact Plaintiff's overall ability to acquire and use information. Although they indicate limitations in the specific areas of spelling and reading, statements from Plaintiff's preschool, kindergarten, and first grade teachers are not consistent with Plaintiff's mother's broad statements that overall her son does not understand anything and cannot use any information he has learned. (Tr. 86).

On October 1, 2002, a counselor called Plaintiff's preschool teacher for her opinion on Plaintiff. (Tr. 126). Plaintiff's teacher stated that testing indicated "some delay in language development," but she was not sure if this was due to his home environment or the result of a learning problem. (Tr. 126). The teacher reported that Plaintiff seemed "to be a pretty normal little boy." (Tr. 126). Plaintiff's first grade teacher noted on Plaintiff's report card, over the course of the year, that Plaintiff needed help with his spelling and that he was reading on a level 10 when he needed to be reading at a level 18. (Tr. 92). His 2004-2005 report card for his first grade year reveals a failing grade in spelling and that he needed improvement in language and writing, but it also reveals As and Bs in reading; a B in math in the first semester and a D in math in the second semester; a satisfactory level in social studies; and a satisfactory level in health/science. (Tr. 93).

While recognizing that Plaintiff clearly needs assistance with reading and spelling, the ALJ correctly determined that, based on the evidence as a whole, the child had less than marked limitation in the overall domain of acquiring and using information. (Tr. 14).

**2. Attending and Completing Tasks**: This domain requires assessment of how well a child is able to focus and maintain attention, and how well a child begins, carries through, and finishes activities. (Tr. 14). *See* 20 C.F.R. § 416.926a(h). Plaintiff argues that he has marked limitation in

this domain and in support of his argument cites to the medications that he is taking and has taken in the past. (Doc. No. 8 p. 9-10).  The ALJ recognized that Plaintiff suffers from hyperactivity and takes medication for it, but found that the impairment is controllable with medication. The ALJ further found this impairment to be less than marked in this domain. (Tr. 14).

The record indicates Plaintiff was prescribed medication for hyperactivity by Dr. Prather in June 2003. (Tr. 123).  On September 11, 2003, Plaintiff's mother reported to Dr. Prather that the medication was doing "a very satisfactory job" of helping to control Plaintiff's hyperactivity. (Tr. 121). On that date, Dr. Prather noted Plaintiff remained in his chair, was not easily distracted, and responded appropriately. (Tr. 121).  On November 6, 2003, Plaintiff's mother stated he was doing well on his medication. (Tr. 121).  Dr. Prather's mental status examination at that time was normal. (Tr. 121).  On April 8, 2004, Dr. Prather noted Plaintiff has some hyperactivity, but his behavior was better controlled. (Tr. 118).  Conditions, such as hyperactivity, that are controllable with medication are not disabling. *See Pepper ex rel. Gardner*, 342 F.3d 853, 855 (8th Cir. 2003).

The record evidence from Plaintiff's teachers also supports the ALJ's assessment in this domain. On October 1, 2002, Plaintiff underwent an intake assessment with the South Arkansas Regional Health Center (Health Center) to obtain medication for Plaintiff's hyperactivity. (Tr. 125). Plaintiff's mother claimed his teacher recommended he take medication for hyperactivity. (Tr. 125). However, when contacted by the counselor, Plaintiff's preschool teacher flatly denied she had ever said Plainitff was hyperactive, needed to be evaluated, or needed medication. (Tr. 125-126).  In fact, the teacher felt that Plaintiff seemed "to be a pretty normal little boy." (Tr. 126).  After the assessment, the counselor opined that Plaintiff was quite active, but that "his activity is not outside the normal limits for a four year old child." (Tr. 127).  The counselor's assessment was ruled out

attention deficit hyperactivity disorder and malingering by the mother on behalf of Plaintiff. (Tr. 127).

On September 16, 2003, Plaintiff's kindergarten teacher completed a school questionnaire at the request of the Social Security Administration, in which she opined that Plaintiff acts "like a typical 5 year old boy." (Tr. 54). She reported no significant problems with concentration on class work or things of interest, or with completing tasks on time. There was noticeable interference, however, with his ability to work independently or stay on task. (Tr. 54). The teacher concluded that "I don't feel that he is disabled. I think he is just an active little boy. He is very well mannered." (Tr. 56).

Although Plaintiff has some limitation in this area due to his hyperactivity, substantial evidence supports the ALJ's finding of less than marked limitation in the domain of attending and completing tasks. (Tr. 14).

**3. Interacting and Relating with Others**: In this domain, the ALJ considers how well the child initiates and sustains emotional connections with others, including the development and use of language, cooperating with others, complying with rules, responding to criticism, and respecting the possessions of others. (Tr. 14). *See* 20 C.F.R. § 416.926a(I). The ALJ found Plaintiff had no limitation in this domain.

Plaintiff's first grade teacher gave him a satisfactory grade in "citizenship." (Tr. 93). Plaintiff's first grade teacher also stated that "[Plaintiff] is a sweet boy!" (Tr. 92). Plaintiff's kindergarten teacher reported that Plaintiff did not have any problems in communication or social functioning. (Tr. 54). She did not find any significant behavioral problems relating to others. (Tr.

55). She indicated that he was "a very well mannered" little boy. (Tr. 56). Plaintiff's preschool teacher stated that he was a "normal little boy." (Tr. 126). During the intake screening with the Health Center in October 2002, the counselor found that Plaintiff interacted freely with the therapist and was able to cooperate with age-appropriate therapeutic activities. (Tr. 127).

Although, as pointed out by Plaintiff, there are inconsistencies between Plaintiff's mother's statements and his teachers as to how Plaintiff interacts with others, there is certainly substantial evidence to support the ALJ's finding that Plaintiff has no limitation in the domain of interacting and relating with others. (Tr. 14).

**4. Moving About and Manipulating Objects**: In this domain, the Plaintiff's gross motor skills are assessed. (Tr. 14). Plaintiff admits he has no limitation in this domain. (Doc. No.8 p.11). The ALJ properly found that in the domain of moving about and manipulating objects, Plaintiff had no limitation. (Tr. 14).

**5. Caring for One's Self**: This domain requires an evaluation of the child's ability to maintain a healthy emotional and physical state while getting wants and needs met in appropriate ways, coping with stress and changes in environment, and whether the child can take care of his or her own health, possessions, and living area. (Tr. 14-15). *See* 20 C.F.R. § 416.926a(k). Plaintiff alleges that he has marked limitation in this area. The ALJ found no limitation in this domain.

Plaintiff's mother testified that she has to dress Plaintiff, tie his shoes, clean him, and brush his teeth. (Tr. 81, 146-147). There is nothing that substantiates this testimony. The records from Dr. Prather, his teachers, and the intake screenings with two counselors do not reveal any marked limitations in this area. Plaintiff's teachers described him as a "normal" and "typical" boy at the

9

preschool, kindergarten, and first grade levels. (Tr. 54, 92-93, 126). There is no underlying mental or physical condition that would limit Plaintiff's ability to care for himself as much as any child his age is able to do. I find there is substantial evidence to support the ALJ's finding of no limitation in the domain of caring for one's self. (Tr. 14).

**6. Health and Physical Well-Being:** This domain includes the cumulative effects of any physical and mental impairments, and any associated treatments or therapies on the child's functioning. (Tr. 15). *See* 20 C.F.R. § 416.926a(l). Plaintiff contends that he has extreme limitation in this domain based upon his alleged seizure activity. (Doc. No. 8 p. 17). The ALJ found a less than marked limitation in this domain.

The ALJ found Plaintiff had been diagnosed with a seizure disorder in the past that required treatment, but the more recent medical evidence indicates that as of June 2004 all treatment was discontinued and his seizure disorder was ruled out. (Tr. 15, 115, 133). The ALJ noted that the medical evidence indicated that he had not had a seizure in years, and that his past seizures had been due too febrile (fever) illnesses. (Tr. 15, 115, 122, 126, 133). During Plaintiff's last treatment with Dr. Prather in March 2005, no mention was made of any seizure activity. (Tr. 131). Plaintiff had not sought any treatment with a neurologist or general practitioner despite his psychiatrist's advice to do so. (Tr. 121-122). Plaintiff's allegations concerning limitations related to alleged seizure activity are simply not borne out by the evidence. I find there is substantial evidence to support the ALJ's finding of less than marked limitation in the domain of health and physical well-being.

### B. Listing for Epilepsy

Plaintiff also argues he meets Listing 11.02 for epilepsy. The Defendant asserts Plaintiff

does not suffer from epilepsy, has never been diagnosed with epilepsy and offers no evidence of suffering from epilepsy.

Plaintiff has the burden of proof to establish that his impairments meet or equal a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). As pointed out by Defendants, although Plaintiff claims he meets Listing 11.02, this Listing is applicable to adults. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. The comparable childhood Listing for convulsive epilepsy is § 111.02(A). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 111.02(A).

In order to meet or equal a Listing, the impairment must meet all of the specified criteria. *See Collins v. Barnhart*, 335 F.3d 726, 731 (8th Cir. 2003)(finding that an impairment is not disabling solely because it has the diagnosis of a listed impairment); *Sullivan v. Zebley*, 493 U.S. at 530 (finding that "[a]n impairment that manifests only some of these criteria, no matter how severely, does not qualify"). Listing 111.02(A) requires evidence of an established diagnosis of convulsive epilepsy involving more than one major motor seizure per month despite at least three months of prescribed treatment, with daytime episodes (loss of consciousness and convulsive seizures) or nocturnal episodes manifesting residuals which interfere with activity during the day. *See* 20 C.F.R. pt. 404, subpt. P, app 1, § 111.02(A).

The record indicates that Plaintiff has never been diagnosed with epilepsy. (Tr. 94-135). The medical records that do discuss Plaintiff's history of seizures are inconsistent. Plaintiff's treatment records indicate that he was assessed with a history of a seizure disorder by his treating psychiatrist Dr. Kenneth Prather based only on the reports from Plaintiff's mother, and not upon any observation or testing by Dr. Prather. (Tr. 16, 94, 115, 120-122).

On September 11, 2003, Dr. Prather completed a report on Plaintiff's alleged seizure disorder and stated that Plaintiff had "tonic-clonic type" seizures three times per month. (Tr. 94). The ALJ properly found that this report was not credible. (Tr. 16, 94). A treating physician's opinion is due controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record. *See Ellis v. Barnhart,* 392 F.3d 988, 995 (8th Cir. 2005); *Prosch v. Apfel*, 201 F.3d 1010, 1012-1013 (8th Cir. 2000). Here, Dr. Prather's seizure report was not supported by medical evidence and was inconsistent with the evidence as a whole.

The records indicate that Dr. Prather treated Plaintiff on only two occasions prior to completing the report for seizure disorder. (Tr. 94, 122-123). Dr. Prather is a psychiatrist and not a specialist qualified to treat seizures. Thus, the opinion contained in this seizure report carries little weight because it was outside his area of expertise as a psychiatrist. *See Loving v. Dept. of HHS*, 16 F.3d 967, 971 (8th Cir. 1994). This finding is also supported by the fact that Dr. Prather repeatedly requested Plaintiff find a new physician to treat the alleged seizure disorder. (Tr. 121-122).

Further, Dr. Prather's report was based only upon the subjective allegations of Plaintiff's mother and not upon any independent testing or medical examination. Plaintiff's mother's statements to Dr. Prather were inconsistent. (Tr. 94). *See Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 1999)(finding that the physician's opinion was properly afforded no deference as it was based heavily upon the claimant's subjective allegations and was at odds with the medical evidence). During the intake screening on October 1, 2002, with the (Health Center) where Dr. Prather practiced, Plaintiff's mother reported that Plaintiff had seizures from birth until age three, but that he had been taking his medication at the time and not had any seizures since then. (Tr. 126). The

counselor noted that none of this seizure activity was verified. (Tr. 126).

     Dr. Prather indicated in his September 11, 2003, report that Plaintiff's mother reported three seizures per visit, but a review of Dr. Prather's progress notes reveal that this statement is not accurate. (Tr. 94).  The ALJ noted that three months earlier, during Dr. Prather's first visit with Plaintiff on June 12, 2003, Plaintiff's mother did not mention  Plaintiff suffering from seizure disorder. (Tr. 16, 123).  Instead, she reported that Plaintiff had no significant medical problems in the past and was currently taking no medications. (Tr. 16, 123).  During Plaintiff's second visit with Dr. Prather on July 10, 2003, Plaintiff's mother reported a history of a seizure disorder, but Dr. Prather noted that, "[a]pparently, all of his seizures were precipitated by a febrile illness . . . . [h]e has not experienced a seizure for many months." (Tr. 122).  Dr. Prather refilled a prescription for a seizure medication (Phenobarbital) that Plaintiff's mother claimed had been prescribed by another physician who was no longer practicing. (Tr. 90- 91, 122).  However, Dr. Prather advised her to find a physician to monitor his seizure disorder. (Tr. 122).  On September 11, 2003, Dr. Prather again advised Plaintiff's mother to find a doctor for his seizures. (Tr. 121).

     On November 6, 2003, Plaintiff's mother reported to Dr. Prather, that Plaintiff was doing well on his medication and had no seizure activity for the past couple of months. (Tr. 121).  Dr. Prather again advised her to find a family physician or neurologist to monitor the seizure disorder. (Tr. 121). The records indicate that Plaintiff's mother did not follow this advice.  As of June 3, 2004, Dr. Prather discontinued Plaintiff's seizure medication (Phenobarbital) and stated that seizure disorder had been ruled out. (Tr. 115, 120).  During a second intake screening by the Health Center on January 7, 2005, the counselor noted that the seizure disorder had been ruled out. (Tr. 133).  Thus, the medical records do not indicate a diagnosis of epilepsy, do not indicate any current seizure

13

disorder, and do not establish the requisite monthly seizure activity for Listing 111.02(A).

Finally, Listing 111.02(A) is applicable only if the impairment persists despite prescribed treatment. *See* 20 C.F.R pt. 404, subpt. P, app. 1, § 111.02(A).  As of June 3, 2004, Plaintiff was no longer under any treatment for seizures. (Tr. 90-91, 115, 133).  The ALJ also correctly noted that even when Plaintiff was receiving treatment, he may not have been compliant. (Tr. 15-16).  For instance, a laboratory test on December 11, 2003, revealed that the level of the seizure medication in Plaintiff's blood was low, which was interpreted by two State Agency physicians to mean that Plaintiff may not have been compliant with his anti-seizure medication. (Tr. 15, 16, 95-96, 100, 110). Also, pharmacy records show Plaintiff had Phenobarbital filed on July 10, 2003 and September 17, 2003, but it was not filed again until March 1, 2004. (Tr. 90-91).

Additionally, the records indicate that Plaintiff's mother was not compliant with Dr. Prather's repeated advice to seek out a neurologist or other physician to monitor this condition. (Tr. 121-122). A lack of compliance with prescribed medical treatment, without good cause, discredits Plaintiff's claim of a disabling seizure disorder and disqualifies him from meeting the criteria of Listing 111.02(A). *See Gowell v Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); 20 C.F.R. pt. 404, subpt. P, app. 1, § 111.02(A). For all of these reasons, I find the Plaintiff's claim, that he meets Listing 111.02(A), as being unsupported by the evidence.

### 4. Conclusion:

The Court has reviewed all of the relevant medical records and briefing in this case. After a careful review of the entire record, this Court finds there is substantial evidence to support the decision of the ALJ.  Accordingly, the Commissioner's decision should be affirmed, and the

Plaintiff's complaint dismissed with prejudice.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

  **ENTERED** this **4th day of May, 2007.**

                 /s/  Barry A. Bryant
                 HON.  BARRY  A. BRYANT
                 U. S. MAGISTRATE JUDGE